TARA K. McGRATH
United States Attorney
ERNEST CORDERO, JR.
Assistant U.S. Attorney
California Bar No. 131865
ERIN M. DIMBLEBY
Assistant U.S. Attorney
California Bar No. 323359
KELLY A. REIS
Assistant U.S. Attorney
California Bar No. 334496
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel: (619) 546-7478/6987/8767
Fax: (619) 546-7751
Email: ernest.cordero@usdoj.gov
Email: erin.dimbleby@usdoj.gov
Email: kelly.reis@usdoj.gov

Attorneys for Defendant
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| E.P.E.; et al., | Case No.: 24-cv-312-AGS-MSB |
| Plaintiffs, | |
| v. | **UNITED STATES OF AMERICA'S MOTION TO DISMISS AND STRIKE COMPLAINT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |
| | Date:    May 24, 2024 |
| | Time:   2:00 p.m. |
| | Judge:  Hon. Andrew G. Schopler |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................ 1

II.    THE COMPLAINT'S RELEVANT ALLEGATIONS ......................................... 2

    A.   Plaintiffs E.P.E., H.S.C.G., S.S.F., and E.C.M.U.'s Unlawful
        Entry into the United States from Mexico During the Quarantine ............. 2

    B.   Plaintiffs' Individual Medical Care and Expulsion from the
        United States Pursuant to the COVID-19 Quarantine ........................ 2

        1.   *Plaintiffs E.P.E. and E.E.B.P.* ..................................... 2

        2.   *Plaintiffs H.S.C.G. and B.Y.C.G.* .................................. 3

        3.   *Plaintiffs S.S.F. and A.L.T.J.P* ................................... 4

        4.   *Plaintiffs E.C.M.U. and E.M.M.* ................................... 4

III.   SIX OF THE COMPLAINT'S COUNTS, AND THE DEMAND FOR
      ATTORNEYS' FEES, ARE NOT VIABLE UNDER THE FTCA ..................... 5

    A.   The Court Lacks Subject Matter Jurisdiction Over Counts II, III,
        IV, and VIII Pled by Non-Citizen Plaintiffs E.P.E., H.S.C.G., S.S.F.,
        and E.C.M.U., Due to the FTCA's Quarantine Exception ....................... 7

        1.   *History and Purpose of the FTCA's Quarantine Exception* ............. 7

        2.   *The Quarantine Exception Deprives the Court of Subject Matter
            Jurisdiction Over a Number of Plaintiff Mothers' Claims* ............. 10

    B.   The Court Lacks Subject Matter Jurisdiction Over Certain Claims
        Due to the FTCA's Foreign Country Exception ........................... 16

    C.   The Court Lacks Subject Matter Jurisdiction Over Count VII Due
        to the FTCA's Misrepresentation Exception............................. 18

    D.   The Court Lacks Subject Matter Jurisdiction Over Counts III and
        IV as There is No Private Analogue .................................. 20

    E.   Plaintiffs' Counts I and II Fail to State Claims for False Imprisonment
        Because Being Expelled to Mexico Does Not Constitute Confinement.... 22

    F.   The Court Should Dismiss, or Strike, Plaintiffs' Demand for
        Attorneys' Fees for Lack of Subject Matter Jurisdiction ............ 24

IV.    CONCLUSION.................................................................. 25

1

**TABLE OF AUTHORITIES**

2 | **CASES**

3 | *A.G. by and through Galindo v. United States,*

4 |     No. 23-CV-745 JLS (KSC), 2023 WL 7134927 (S.D. Cal. Oct. 30, 2023)........... 20, 24

5 | *Anderson v. United States,*

6 |     127 F.3d 1190 (9th Cir. 1997) ................................................................... 6, 24

7 | *Arizona v. Mayorkas,*

8 |     143 S. Ct. 478 (2022)................................................................................. 14

9 | *Asgari v. City of Los Angeles,*

10 |     15 Cal.4th 744 (1997) ............................................................................... 22

11 | *Bhuiyan v. United States,*

12 |     772 F. App'x 564 (9th Cir. 2019)............................................................21-22

13 | *Block v. Neal,*

14 |     460 U.S. 289 (1983)................................................................................... 18

15 | *Brown v. Ransweiler,*

16 |     171 Cal. App. 4th 516 (2009) ..................................................................... 21

17 | *Brown v. United States,*

18 |     No. 3:22-cv-124, 2023 WL 5167251 (N.D.W. Va. Apr. 28, 2023) ............................. 10

19 | *Cascabel Cattle Co. v. United States,*

20 |     955 F.3d 445 (5th Cir. 2020) ................................................................. 7, 8, 10

21 | *Cascabel Cattle Co. v. United States,*

22 |     No. B-17-61, 2018 WL 5850575 (S.D. Tex. Sept. 5, 2018)................................. 7, 10, 11

23 | *Conrad v. United States,*

24 |     447 F.3d 760 (9th Cir. 2006) ...................................................................... 20

25 | *Dalehite v. United States,*

26 |     346 U.S. 15 (1953)......................................................................... 10, 15, 17

27

28

ii

*Delgadillo v. United States*,
   No. B-17-59, 2018 WL 5732080 (S.D. Tex. Sept. 5, 2028)..........................................11

*Demore v. Kim*,
   538 U.S. 510 (2003).....................................................................................................21

*Dittman v. Medical Solution*,
   No. 2:17-cv-01851-MCE-CKD,
   2019 WL 4302752 (E.D. Cal. Sept. 11, 2019) ..................................................16, 18, 24

*Doe v. United States*,
   No. 15-CV-1599-W-BGS, 2016 WL 5107656 (S.D. Cal. Apr. 7, 2016)...............18, 19

*Domantay v. U.S. Dep't of Veterans Affairs*,
   No. 18-cv-03726-SK, 2018 WL 10501631 (N.D. Cal. Dec. 10, 2018)........................17

*Easton v. Sutter Coast Hosp.*,
   80 Cal. App. 4th 485 (2000) ...................................................................................22-23

*Elgamal v. Bernacke*,
   714 F. App'x 741 (9th Cir. 2018).................................................................................22

*Elgamal v. United States*,
   No. CV-13-00867-PHX-DLR, 2015 WL 13648070 (D. Ariz. July 8, 2015)...............22

*Esquivel v. United States*,
   21 F.4th 565 (9th Cir. 2021) ........................................................................................18

*Estate of Munoz v. United States*,
   No. 3:23-cv-1422-JES-SBC, 2024 WL 584430 (S.D. Cal. Feb. 13, 2024)..................24

*Evans v. United States*,
   No. 14-40042-DHH, 2016 WL 5844473 (D. Mass. Sept. 30, 2016) ...........................11

*FDIC v. Meyer*,
   510 U.S. 471 (1994).......................................................................................................5

*Fermino v. Fedco, Inc.*,
   7 Cal.4th 701 (1994) ....................................................................................................23

*Gager v. United States,*
   149 F.3d 918 (9th Cir. 1998) ................................................................. 6

*Gaskin v. May,*
   No. 15-33 (EGS), 2023 WL 2239349 (D.D.C. Feb. 27, 2023) ................... 17

*Green v. United States,*
   629 F.2d 581 (9th Cir. 1980) ................................................................ 18

*Green v. United States,*
   630 F.3d 1245 (9th Cir. 2011) .............................................................. 20

*Huisha-Huisha v. Mayorkas,*
   27 F.4th 718 (D.C. Cir. 2022) ......................................................... 11, 14

*Huisha-Huisha v. Mayorkas,*
   642 F. Supp. 3d 1 (D.D.C. 2022) .......................................................... 14

*Jachetta v. United States,*
   653 F.3d 898 (9th Cir. 2011) .................................................................. 5

*Johnson v. United States,*
   No. 3:22-cv-56, 2023 WL 4537720 (N.D.W. Va. Feb. 17, 2023) ............... 11

*Kosak v. United States,*
   465 U.S. 848 (1984) ............................................................................. 6

*Lane v. Pena,*
   518 U.S. 187 (1996) ............................................................................. 5

*Lawrence v. United States,*
   340 F.3d 952 (9th Cir. 2003) ................................................................ 18

*Martinez v. City of Los Angeles,*
   141 F.3d 1373 (9th Cir. 1998) .............................................................. 23

*Mazur v. United States,*
   957 F. Supp. 1041 (N.D. Ill. 1997) ........................................................ 22

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ...................................................................... 24

*Molzof v. United States*,
   502 U.S. 301 (1992)................................................................................... 6, 8

*Omoniyi v. Dep't of Homeland Sec.*,
   No. 10 Civ. 1344(DF), 2012 WL 892197 (S.D.N.Y. Mar. 13, 2012) ........................... 22

*O'Toole v. United States*,
   295 F.3d 1029 (9th Cir. 2002) ....................................................................... 6

*Pauly v. U.S. Dep't of Agric.*,
   348 F.3d 1143 (9th Cir. 2003) ...................................................................... 18

*Placencia v. United States*,
   No. 16-cv-02354-BEN-MDD, 2017 WL 3017708 (S.D. Cal. July 14, 2017) .............. 17

*Ramirez v. United States*,
   No. B-17-60, 2018 WL 5732082 (S.D. Tex. Sept. 5, 2018)............................... 11

*Rey v. United States*,
   484 F.2d 45 (5th Cir. 1973) ......................................................................... 10

*Rhoden v. United States*,
   55 F.3d 428 (9th Cir. 1995) ......................................................................... 23

*Robinson v. United States*,
   586 F.3d 683 (9th Cir. 2009) ........................................................................ 7

*S.H. by Holt v. United States*,
   853 F.3d 1056 (9th Cir. 2017) ..................................................................... 16

*Salazar-Gonzalez v. U.S. Citizenship and Immigration Services*,
   No. 15cv281-MMA (MDD), 2016 WL 11783402 (S.D. Cal. Oct. 11, 2016)......... 21, 22

*Saxton v. United States*,
   456 F.2d 1105 (8th Cir. 1972) ..................................................................... 11

*Scofield v. Critical Air Med., Inc.*,
  45 Cal. App. 4th 990 (1996) ......................................................................... 23

*Shen v. Leo A. Daly Co.*,
  222 F.3d 472 (8th Cir. 2000) .................................................................. 23, 24

*Snow-Erlin v. United States*,
  470 F.3d 804 (9th Cir. 2006) ....................................................................... 19

*Snyder & Assocs. Acquisitions LLC v. United States*,
  859 F.3d 1152 (9th Cir. 2017) ..................................................................... 18

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) ............................................................................... 16, 17

*Tekle v. United States*,
  511 F.3d 839 (9th Cir. 2007) ....................................................................... 20

*Thieme v. United States*,
  No. 21-682 (RMB-AMD), 2023 WL 2584102 (D.N.J. Mar. 21, 2023) ................. 10, 15

*Thomas-Lazear v. FBI*,
  851 F.2d 1202 (9th Cir. 1988) ..................................................................... 19

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) .................................................................................... 21

*United States v. Daas*,
  198 F.3d 1167 (9th Cir. 1999) ....................................................................... 7

*United States v. Olson*,
  546 U.S. 43 (2005) ...................................................................................... 20

*United States v. Spelar*,
  338 U.S. 217 (1949) .................................................................................... 16

*United States v. Varig Airlines*,
  467 U.S. 797 (1984) ...................................................................................... 6

*Wallace v. U.S. Dep't of Just.*,
   No. 21-CT-3055-D, 2021 WL 2853692 (E.D.N.C. June 24, 2021) ................... 7, 15, 16

*Watts v. Cnty. of Sacramento*,
   256 F.3d 886 (9th Cir. 2001) ......................................................................... 23

*Westbay Steel, Inc. v. United States*,
   970 F.2d 648 (9th Cir. 1992) ......................................................................... 20

*Young v. Cnty. of Los Angeles*,
   655 F.3d 1156 (9th Cir. 2011) ....................................................................... 22

**STATUTES**

28 U.S.C. § 1346(b)(1) ..................................................................................... 6, 20

28 U.S.C. § 2674 ................................................................................................... 6

28 U.S.C. § 2680 ................................................................................................... 6

28 U.S.C. § 2680(a)-(n) ........................................................................................ 6

28 U.S.C. § 2680(f) ........................................................................................... 7, 9

28 U.S.C. § 2680(h) ............................................................................................ 18

28 U.S.C. § 2680(k) ............................................................................................ 16

28 U.S.C. §§ 2671–80 ..................................................................................... 5-6

42 U.S.C. § 111 (1925) ..................................................................................... 8, 9

42 U.S.C. § 265 .......................................................................................... passim

42 U.S.C. § 268 .................................................................................................. 12

42 U.S.C. § 268(b) ............................................................................................. 14

**RULES**

Fed. R. Civ. P. 56 .......................................................................... 1, 16, 18, 24

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1

Fed. R. Civ. P. 12(f) ............................................................................................ 1

**OTHER**

Act of Feb. 15, 1893, 27 Stat. 449 (1893) ................................................................. 8

Act of March 3, 1891, 26 Stat. 1084 (1891) ............................................................. 8

Act of May 27, 1796, 1 Stat. 474 (1796) ................................................................. 8

An Act Concering Aliens, 1 Stat. 570 (1798) ............................................................ 8

Exec. Order No. 5143 (June 21, 1929) .................................................................... 9

H.R. Rep. No. 78-1364 (1944) ............................................................................... 9

31 Fed. Reg. 8855 (June 25, 1966) ......................................................................... 9

85 Fed. Reg. 16559 (Mar. 24, 2020) ........................................................ 9, 11, 12, 15

85 Fed. Reg. 17060 (Mar. 26, 2020) ...................................................... 12, 13, 14, 15

85 Fed. Reg. 22424 (Apr. 22, 2020) .................................................................... 14

85 Fed. Reg. 31503 (May 26, 2020) ..................................................................... 14

85 Fed. Reg. 56424 (Sept. 11, 2020) ...................................................... 11, 12, 14, 15

85 Fed. Reg. 65806 (Oct. 16, 2020) ................................................................. 14, 15

## MOTION

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(f), and 56, the United States moves to dismiss and strike Plaintiffs' Complaint, or in the alternative, for partial summary judgment. This motion is based on the following Memorandum of Points and Authorities, as well as all pleadings and filings in this action, and upon any other matters or argument that the Court may permit.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case arises out of a quarantine (the COVID-19 quarantine) imposed under 42 U.S.C. § 265 during the height of the COVID-19 pandemic. With limited exceptions, the COVID-19 quarantine suspended entry into the United States of covered noncitizens. It also mandated their return to the country from which they entered, or their country of origin, or that they be expelled to another location, as quickly as possible. Plaintiffs in this case are noncitizen mothers who unlawfully entered the United States during the COVID-19 quarantine, and their U.S. citizen children born shortly after the mothers were apprehended by Border Patrol agents. Plaintiffs allege claims based on their expulsion from the United States, and other actions Border Patrol agents took, as those agents attempted to enforce the COVID-19 quarantine.

Because a jurisdictional prerequisite to suit against the United States is a waiver of sovereign immunity, Plaintiffs rely on the Federal Torts Claims Act (FTCA) for this waiver. But many of their claims are fatally flawed because they fall within the FTCA's exceptions. As to those excepted claims, the Court lacks subject matter jurisdiction to hear them. Specifically, Plaintiff Mothers cannot maintain Counts II, III, IV, and VIII of the Complaint due to the quarantine exception. Similarly, Counts I, II, IV, and VIII are not cognizable due to the foreign country exception. The misrepresentation exception also deprives the Court of subject matter jurisdiction over Count VII.

The Complaint also suffers from other defects. There is no private analogue to support Counts III and IV. Plaintiffs also fail to state a claim in Counts I and II for false

imprisonment in Mexico. Finally, the demand for attorneys' fees must be dismissed or stricken because the United States has not waived sovereign immunity permitting an award of such fees.

## II.     THE COMPLAINT'S RELEVANT ALLEGATIONS

### A.     Plaintiffs E.P.E., H.S.C.G., S.S.F., and E.C.M.U.'s Unlawful Entry into the United States from Mexico During the Quarantine

Effective March 20, 2020, and pursuant to the authority granted by 42 U.S.C. § 265, the COVID-19 quarantine went into effect. ECF No. 1 ¶ 21. At the time, "the [Centers for Disease Control and Prevention (CDC)] issued the first of several orders providing the [Department of Homeland Security (DHS)] with authority to 'suspend the introduction' of noncitizens seeking to enter the United States at and between land ports of entry [(POEs)]." *Id*. On separate dates during the COVID-19 quarantine, Plaintiffs E.P.E., H.S.C.G., S.S.F., and E.C.M.U. entered the United States between POEs from Mexico while pregnant. ECF No. 1 ¶¶ 32, 64, 96, 125. After their apprehensions, and due to their late-stage pregnancies, Border Patrol had Plaintiffs transported to hospitals in San Diego County, where they received medical care and delivered healthy babies: Plaintiffs E.E.B.P., B.Y.C.G., A.L.T.J.P., and E.M.M. *See generally* ECF No. 1 ¶¶ 40, 72, 101, 133.

### B.     Plaintiffs' Individual Medical Care and Expulsion from the United States Pursuant to the COVID-19 Quarantine

#### 1.     *Plaintiffs E.P.E. and E.E.B.P.*

Plaintiff E.P.E., a Mexican national, entered the United States between POEs on March 25, 2020. ECF No. 1 ¶¶ 32, 36. At the time Border Patrol apprehended E.P.E., she was approximately 37 weeks pregnant and accompanied by her two minor United States citizen sons. ECF No. 1 ¶¶ 32, 36. In the days before her illegal entry into the United States, E.P.E. had been denied entry at the San Ysidro Port of Entry (SYPOE). ECF No. 1 ¶ 34. Customs and Border Protection officers told E.P.E. that she could not enter the United States due to the COVID-19 pandemic. ECF No. 1 ¶ 34.

When Border Patrol agents encountered E.P.E., she claimed to be experiencing

medical distress. ECF No. 1 ¶ 37. Agents called an ambulance, which transported E.P.E. and her sons to Scripps Mercy Hospital in Chula Vista, California, where she was treated for preeclampsia. ECF No. 1 ¶¶ 37–39. On March 26, 2020, E.P.E. gave birth to Plaintiff E.E.B.P. via cesarean section. ECF No. 1 ¶ 40. E.P.E. alleges that while in the hospital, she informed Border Patrol agents on "two or more occasions" that she feared returning to Mexico, but she did not receive a fear assessment screening. ECF No. 1 ¶ 45.

On March 28, 2020, the hospital discharged both E.P.E. and E.E.B.P. The hospital provided E.P.E. with formula, diapers, baby clothes, a blanket, maternity sanitary pads, and hospital paperwork. ECF No. 1 ¶¶ 46–47. The hospital also returned E.P.E.'s backpack. ECF No. 1 ¶ 47. Later that same day, E.P.E., her two older children, and E.E.B.P. were expelled to Mexico through the SYPOE. ECF No. 1 ¶ 52. E.P.E. returned to the United States with her three children in April 2021, and she was granted asylum on July 1, 2022. ECF No. 1 ¶¶ 62–63. E.P.E. and E.E.B.P. allege that after their expulsion, they experienced "suffering" in Mexico for 375 days. ECF No. 1 at 13; *see id.* at 19–21.

### 2.    *Plaintiffs H.S.C.G. and B.Y.C.G.*

Plaintiff H.S.C.G., a Honduran national, entered the United States between POEs on July 10, 2020. ECF No. 1 ¶¶ 96, 98. When apprehended by Border Patrol, H.S.C.G. was about 9 months pregnant and accompanied by her minor son. ECF No. 1 ¶ 96. After observing her in medical distress, Border Patrol agents who encountered her called an ambulance. ECF No. 1 ¶ 98. The ambulance transported H.S.C.G. to Scripps Mercy Hospital in Chula Vista. ECF No. 1 ¶ 99.

H.S.C.G. gave birth to Plaintiff B.Y.C.G. on July 11, 2020. ECF No. 1 ¶ 101. H.S.C.G. alleges she told hospital staff that she feared returning to Mexico and Honduras. ECF No. 1 ¶ 104. She believes hospital staff relayed the information to Border Patrol agents. ECF No. 1 ¶ 104. H.S.C.G. was discharged from the hospital on July 13, 2020. ECF No. 1 ¶ 105. The hospital provided H.S.C.G. "a few items" for B.Y.C.G. ECF No. 1 ¶ 106.

On July 13, 2020, H.S.C.G., her older son, and B.Y.C.G. were transported to the SYPOE and expelled to Mexico. ECF No. 1 ¶ 110. H.S.C.G. reentered the United States on

March 26, 2021, with her two children. ECF No. 1 ¶ 123. H.S.C.G. is currently seeking humanitarian relief from removal in the United States. ECF No. 1 ¶ 124. H.S.C.G. and B.Y.C.G. allege that after their expulsion, they experienced "suffering" in Mexico for 256 days. ECF No. 1 at 32; *see id.* at 38–39.

### 3. *Plaintiffs S.S.F. and A.L.T.J.P.*

Plaintiff S.S.F. is a Haitian national who entered Mexico in 2019 and received Mexican immigration status. ECF No. 1 ¶¶ 125–26. She entered the United States between POEs on July 14, 2020. ECF No. 1 ¶ 128. At the time S.S.F. crossed from Mexico into the United States, she was about 9 months pregnant. ECF No. 1 ¶ 125. Upon encountering her on July 15, 2020, agents transported S.S.F. to a Border Patrol facility. ECF No. 1 ¶ 128. When she began to experience pain, agents took her to Scripps Mercy Hospital in Chula Vista on July 15. ECF No. 1 ¶ 130. S.S.F. gave birth to Plaintiff A.L.T.J.P. on July 16, 2020. ECF No. 1 ¶ 133.

On July 18, 2020, the hospital discharged S.S.F. and A.L.T.J.P. ECF No. 1 ¶ 136. At the time of discharge, the hospital provided S.S.F. with bottles of milk, baby clothing, and records of A.L.T.J.P.'s birth. ECF No. 1 ¶ 136. Subsequently, Border Patrol agents drove S.S.F. and A.L.T.J.P. to a POE and expelled them from the United States to Mexico. ECF No. 1 ¶¶ 139–40. S.S.F. and A.L.T.J.P. reentered the United States on February 23, 2021. ECF No. 1 ¶ 151. S.S.F. was granted Temporary Protected Status in the United States and is now pursuing an asylum claim. ECF No. 1 ¶ 152. S.S.F. and A.L.T.J.P. allege that after their expulsion, they experienced "suffering" in Mexico for 220 days. ECF No. 1 at 40; *see id.* at 46–48.

### 4. *Plaintiffs E.C.M.U. and E.M.M.*

Plaintiff E.C.M.U., a Honduran national, entered the United States between POEs on December 8, 2020. ECF No. 1 ¶¶ 64, 67. At the time of her apprehension, E.C.M.U. was approximately 38 weeks pregnant and accompanied by her two minor children. ECF No. 1 ¶ 64. When Border Patrol first encountered E.C.M.U., she was experiencing labor pains and her water had broken. ECF No. 1 ¶ 68. Agents called an ambulance, which transported

1    E.C.M.U. to Sharp Medical Center in Chula Vista. ECF No. 1 ¶¶ 68, 71.

2         E.C.M.U. gave birth to Plaintiff E.M.M. on December 9, 2020. ECF No. 1 ¶ 72.

3    Hospital staff gave E.C.M.U. the record of E.M.M.'s birth, which E.C.M.U. stored in her

4    clothes. ECF No. 1 ¶ 80. E.C.M.U. alleges that during her time in the hospital, she tried to

5    tell hospital staff that she feared returning to both Mexico and Honduras, but stopped

6    speaking with the social worker because she was intimidated by Border Patrol agents. ECF

7    No. 1 ¶ 79. E.C.M.U. alleges she did not receive a fear assessment screening. ECF No. 1

8    ¶ 87.

9         On December 10, 2020, E.C.M.U. and E.M.M. were discharged from the hospital,

10   and E.C.M.U.'s older children were returned to her custody. ECF No. 1 ¶¶ 81, 83. E.C.M.U.

11   alleges that an agent lied and told her they were going to meet her husband, but instead she

12   and her children were taken to the SYPOE. ECF No. 1 ¶ 83. E.C.M.U., her infant, and two

13   older children were expelled to Mexico on December 10, 2020. ECF No. 1 ¶ 85. E.C.M.U.

14   reentered the United States on March 26, 2021, with her three children. ECF No. 1 ¶ 94.

15   She now is seeking lawful permanent residency status in the United States through her

16   husband. ECF No. 1 ¶ 95. E.C.M.U. and E.M.M. allege that after their expulsion, they

17   experienced "suffering" in Mexico for 106 days. ECF No. 1 at 22; *see id.* at 29–31.

18   **III.   SIX OF THE COMPLAINT'S COUNTS, AND THE DEMAND**
19   **FOR ATTORNEYS' FEES, ARE NOT VIABLE UNDER THE FTCA**

20        The United States may not be sued without its consent, and in the absence of such

21   consent, the court lacks jurisdiction over claims brought against it. *Jachetta v. United States*,

22   653 F.3d 898, 903 (9th Cir. 2011). "Sovereign immunity is jurisdictional in nature," so there

23   is no subject matter jurisdiction unless sovereign immunity has been waived. *FDIC v.*

24   *Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity shields both the federal government

25   and its agencies from suit. *Id.* The government's waiver of sovereign immunity cannot be

26   implied, but "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S.

27   187, 192 (1996).

28        The FTCA waives the federal government's immunity for certain lawsuits. 28 U.S.C.

§§ 2671–80. Under the FTCA, the government is liable for "tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. The FTCA's waiver of sovereign immunity is limited by 28 U.S.C. § 2680, "a statutory reservation of sovereign immunity for a particular class of tort claims." *Gager v. United States*, 149 F.3d 918, 920 (9th Cir. 1998). There are thirteen enumerated exceptions. 28 U.S.C. § 2680(a)-(n). "Where an exception to the FTCA under § 2680 applies, the United States has elected not to waive its immunity from suit, and courts are without jurisdiction over such claims." *O'Toole v. United States*, 295 F.3d 1029, 1033 (9th Cir. 2002).[1]

Here, Plaintiffs bring their ten claims against the United States under the FTCA. But the Court lacks subject matter jurisdiction over those falling within the FTCA exceptions contained in 28 U.S.C. § 2680. Plaintiffs' claims involving quarantines, injuries occurring in foreign countries, and misrepresentations all fall within the exceptions. The FTCA also only authorizes private tort actions "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Plaintiffs' claims lacking a private analogue under state law are not viable. Further, Plaintiffs' claims of false imprisonment fail to sufficiently state a claim as the allegations do not plead a confinement. Finally, there has been no waiver of sovereign immunity that would permit the recovery of attorneys' fees. *Anderson v. United States*, 127 F.3d 1190, 1191 (9th Cir. 1997).

///

///

---

[1] The Supreme Court has explained that "[t]he § 2680 exceptions are designed to protect certain important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992). "Congress' primary concern in enumerating the § 2680 exceptions was to retain sovereign immunity with respect to certain governmental functions that might otherwise be disrupted by FTCA lawsuits." *Id.* at 311–12 (emphasis omitted). In its enumerations, Congress was "ensuring that 'certain governmental activities' [would] not be disrupted by the threat of damages suits." *Kosak v. United States*, 465 U.S. 848, 858 (1984). Thus, section 2680 "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

**A.    The Court Lacks Subject Matter Jurisdiction Over Counts II, III, IV, and VIII Pled by Non-Citizen Plaintiffs E.P.E, H.S.C.G., S.S.F., and E.C.M.U., Due to the FTCA's Quarantine Exception**

Under the FTCA, there is no jurisdiction for "[a]ny claim for damages caused by the imposition or establishment of a quarantine by the United States." 28 U.S.C. § 2680(f). This FTCA exception "immunizes the Government from suit for damages proximately caused by the decision whether to impose a quarantine and any actions undertaken by the Government to carry out the purposes of the quarantine. The Government retains this immunity even if it acts negligently in carrying out the quarantine." *Wallace v. U.S. Dep't of Just.*, No. 5:21-CT-3035-D, 2021 WL 2853692, at *2 (E.D.N.C. June 24, 2021) (quoting *Cascabel Cattle Co. v. United States*, No. B-17-61, 2018 WL 5850575, at *14 (S.D. Tex. Sept. 5, 2018), R. & R. *adopted*, 2018 WL 5811007 (S.D. Tex. Nov. 5, 2018)), *aff'd*, 2022 WL 1024613 (4th Cir. Apr. 6, 2022). The quarantine exception has been "broad[ly]" interpreted to "severely limit[] governmental liability for decisions instituting quarantines and directing the application of remedies as part of that quarantine." *Cascabel Cattle Co.*, 2018 WL 5850575, at *14. "The very nature of quarantines is that they may increase the risk to some in order to protect many. By retaining its sovereign immunity, the government has permitted itself to exercise its discretion in this sensitive area free from fear of litigation." *Cascabel Cattle Co. v. United States*, 955 F.3d 445, 452 (5th Cir. 2020).

**1.    *History and Purpose of the FTCA's Quarantine Exception***

The quarantine exception—like 42 U.S.C. § 265—has seen limited application since its inception, and while the Supreme Court and Ninth Circuit have not interpreted this statutory exception, its legislative history—along with other courts' application—are instructional. As an initial matter, the plain language of the exception has been interpreted broadly. This is important because "[t]he purpose of statutory construction is to discern the intent of Congress in enacting a particular statute." *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009) (quoting *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999)). For purposes of the quarantine exception, "'establishment' of the quarantine refers

7

to enactment of the quarantine, and 'imposition' of the quarantine refers to the manner in which the quarantine is carried out and enforced." *Cascabel Cattle Co.*, 955 F.3d at 451.

The history of the quarantine exception, and related quarantine laws pre-dating its incorporation into the FTCA, also support its application to this case. The federal government has long utilized its inherent sovereign power to take actions to prevent the spread of communicable diseases into the United States. In 1796, Congress enacted the first federal quarantine law in response to an outbreak of yellow fever. Act of May 27, 1796, 4 Cong. Ch. 31, 1 Stat. 474 (1796). Similarly, in exercising its authority over immigration and foreign relations, as early as 1798, the federal government provided for the expulsion of certain noncitizens. *See* An Act Concerning Aliens, § 1, 1 Stat. 570, 570-71 (1798). Notably, in 1891, Congress provided for the exclusion of noncitizens with "a loathsome or dangerous contagious disease." Act of March 3, 1891, ch. 551, § 1, 26 Stat. 1084, 1084.

The predecessor statute to the federal government's current authority under 42 U.S.C. § 265 was established in 1893 when Congress provided the Executive branch authority to enact rules and regulations to prevent the introduction of individuals from certain countries during public health emergencies. Act of Feb. 15, 1893, ch. 114, § 7, 27 Stat. 449, 452 (1893 Act). The 1893 Act was enacted in response to the cholera epidemic. 24 Cong. Rec. 359 (1893).[2] In recognizing the threat of cholera from Europe, Mexico, and Canada, Congress sought to prevent the disease "from either entering the country or spreading after it has made its entry." 24 Cong. Rec. 359 (1893); *see also id.* at 363, 364. Specifically, the 1893 Act authorized the President to "prohibit . . . the introduction of persons" into the United States, "wherever" the President is satisfied that "by reason of the existence of cholera or other infectious or contagious diseases in a foreign country there is a serious danger of the introduction of the same into the United States . . . notwithstanding the quarantine defense," such that "a suspension of the right to introduce" is "demanded in the interest of the public health." 27 Stat. at 452. The 1893 Act was utilized in 1929 in response

---

[2] The 1893 Act was subsequently codified, as amended, at 42 U.S.C. § 111 (1925).

to a meningitis outbreak, where an executive order was issued, providing that "no persons may be introduced directly or indirectly by transshipment or otherwise into the United States . . . for such period of time as may be deemed necessary." Exec. Order No. 5143 (June 21, 1929).

In 1944, amid outbreaks of malaria, the 1893 Act was recodified as Section 362 of the Public Health Services Act, 42 U.S.C. § 265, 58 Stat. 682, 704 (1944). Section 265 provides:

> Whenever the Surgeon General determines that by reason of the existence of any communicable disease in a foreign country there is serious danger of the introduction of such disease into the United States, and that this danger is so increased by the introduction of persons or property from such country that a suspension of the right to introduce such persons and property is required in the interest of the public health, the Surgeon General, in accordance with regulations approved by the President, **shall have the power to prohibit, in whole or in part, the introduction of persons and property from such countries or places as he shall designate** in order to avert such danger, and for such period of time as he may deem necessary for such purpose.

42 U.S.C. § 265 (emphasis added).[3]

As explained in a House of Representatives report, "Section 362 [of the Public Health Services Act] would reenact a provision of present law (42 U.S.C. § 111) authorizing the suspension of travel of persons and shipment of goods from any foreign country where a communicable disease exists, if there is found to be a serious danger of introduction of the disease into the United States." H.R. Rep. No. 78-1364, at 25 (1944).

Two years later, in 1946, Congress enacted the FTCA. One of the FTCA's enumerated exceptions is for "[a]ny claim for damages caused by the imposition or establishment of a quarantine by the United States." 28 U.S.C. § 2680(f). During Congressional hearings, Alexander Holtzoff—a special assistant to United States Attorney General Robert Jackson who assisted in editing the FTCA bill's initial draft—testified regarding the bill and its exceptions. Regarding the quarantine exception, he testified that

---

[3] Authority to act under this statute transferred from the Surgeon General to the Secretary of the U.S. Department of Health and Human Services (HHS). 31 Fed. Reg. 8855 (June 25, 1966). Currently, authority under § 265 is exercised by the CDC. 85 Fed. Reg. 16559, 16560, 16563 (Mar. 24, 2020).

"[i]t seemed to the draftsmen of the bill that as to this type of claims it might be rather dangerous to permit suits to be brought under a general statute such as this. If they are to be recognized, it should be under a private act in those instances where any relief is proper." Hearing on S. 2690 before the Sen. Comm. on the Judiciary, 76th Cir. Cong., 3d Sess. 38 (1940). "From this it appears that Congress did not want quarantine-based suits to be brought under a general tort statute, given that a quarantine for a highly-contagious disease could result in numerous and costly claims. Instead, Congress could pass a more limited relief act, one which would fairly compensate victims." *Cascabel Cattle Co.*, 2018 WL 5850575, at *13 (citing Hearing on S. 2690 at 38). "One only need read § 2680 in its entirety to conclude that Congress exercised care to protect the Government from claims, however negligently caused, that affected the governmental functions. Negligence in . . . establishing a quarantine . . . [is] barred" under the FTCA. *Dalehite v. United States*, 346 U.S. 15, 32 (1953).

## 2. *The Quarantine Exception Deprives the Court of Subject Matter Jurisdiction Over a Number of Plaintiff Mothers' Claims*

Courts analyzing the quarantine exception have held that it bars claims proximately caused by the decision to establish a quarantine and the actions taken in imposing a quarantine. *See Cascabel Cattle Co.*, 955 F.3d at 451–52 (holding, while noting that "the crux of proximate cause is reasonable foreseeability," that "the quarantine exception applies when a plaintiff's damages are reasonably foreseeable based on the government's decision to establish a quarantine or the government's actions imposing the quarantine"); *Rey v. United States*, 484 F.2d 45, 48 (5th Cir. 1973) (finding the quarantine exception's "bar to apply only to damages proximately caused by the 'imposition or establishment of a quarantine'" (footnote omitted)); *Thieme v. United States*, No. 21-682 (RMB-AMD), 2023 WL 2584102, at *10 (D.N.J. Mar. 21, 2023) (finding the quarantine exception applies to actions undertaken in carrying out the purposes of the quarantine).[4]

---

[4] *See also Brown v. United States*, No. 3:22-cv-124, 2023 WL 5167251, at *13 (N.D.W. Va. Apr. 28, 2023) (finding the quarantine exception immunizes the government

10

In the case of the COVID-19 quarantine, much of the nation was locked down by then end of March 2020. "The rest of that year was defined by uncertainty, a changing disease, limited knowledge even within the medical community, and the need for immediate private and public action." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 725 (D.C. Cir. 2022). For these reasons, HHS and the CDC issued an interim final rule to implement Section 265 and "enable the CDC Director to suspend the introduction of persons into the United States." *Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons into United States from Designated Foreign Countries or Places for Public Health Purposes*, 85 Fed. Reg. 16559, 16563 (Mar. 24, 2020).[5] The interim rule, issued pursuant to 42 U.S.C. § 265, specifically provided the following:

> (a) The Director may prohibit the introduction into the United States of persons from designated foreign countries . . . or places, only for such period of time that the Director deems necessary for the public health, by issuing an order in which the Director determines that: (1) By reason of the existence of any communicable disease in a foreign country . . . or place there is serious danger of the introduction of such communicable disease into the United States; and (2) This danger is so increased by the introduction of persons from such

from suits for any claims "related to a quarantine"), R.&R. *adopted*, 2023 WL 4744597 (N.D. W.Va. July 25, 2023); *Cascabel Cattle Co.*, 2018 WL 5850575, at *14 ("In short, the quarantine exception immunizes the Government from suit for damages proximately caused by the decision whether to impose a quarantine and any actions undertaken by the Government to carry out the purposes of the quarantine."); *Delgadillo v. United States*, No. B-17-59, 2018 WL 5732080, at *12 (S.D. Tex. Sept. 5, 2028), R.&R. *adopted*, 2018 WL 6732888 (S.D. Tex. Nov. 6, 2018) (same); *Ramirez v. United States*, No. B-17-60, 2018 WL 5732082, at *12 (S.D. Tex. Sept. 5, 2018) (same), R.&R. *adopted*, 2018 WL 5810493 (S.D. Tex. Nov. 6, 2018); *Evans v. United States*, No. 14-40042-DHH, 2016 WL 5844473, at *4 (D. Mass. Sept. 30, 2016) ("For the quarantine exception to apply, the damages must be proximately caused by the imposition or establishment of a quarantine by the United States."); *see also Saxton v. United States*, 456 F.2d 1105, 1106 (8th Cir. 1972) (holding that "a claim arising out of any 'quarantine' is likewise specifically excepted from the Torts Claims Act"); *Johnson v. United States*, No. 3:22-cv-56, 2023 WL 4537720, at *7 (N.D.W. Va. Feb. 17, 2023) (dismissing COVID-19 based claim based on discretionary function exception, but also noting that quarantine exception applied because "the Government is immune from suit for any claim related to a quarantine").

[5] The interim rule went into effect on March 20, 2020 at 11:59 p.m. EDT. 85 Fed. Reg. 16559. The final rule was issued on September 11, 2020, and went into effect on October 13, 2020. 85 Fed. Reg. 56424 (Sept. 11, 2020).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

country . . . or place that a suspension of the introduction of such persons into the United States is required in the interest of the public health.

85 Fed. Reg. 16559, 16566. It further defined "introduction into the United States of persons" to mean "the movement of a person from a foreign country . . . into the United States so as to bring the person into contact with persons in the United States . . . in a manner that the Director determines to present a risk of transmission of a communicable disease to persons or property, even if the communicable disease has already been introduced, transmitted, or is spreading within the United States." 85 Fed. Reg. 16559, 16566. This definition "encompass[ed] those who have physically crossed a border of the United States and are in the process of moving into the interior in a manner the Director determines to present a risk of transmission of a communicable disease." 85 Fed. Reg. 16559, 16563. The CDC Director, in the final iteration, also explained that the "legislative history indicates that Congress, in enacting [Sections 265's] predecessor, sought to give the Executive Branch the authority to suspend immigration when required in the interest of public health" and that "[t]his authority is available only in rare circumstances when 'required in the interest of the public health.'" 85 Fed. Reg. 56424, 56426 (quoting 42 U.S.C. § 265).[6]

On March 26, 2020, the CDC Director issued an Order, pursuant to 42 U.S.C. §§ 265, 268, temporarily suspending the introduction of certain "covered" noncitizens traveling from Canada and Mexico into the United States. 85 Fed. Reg. 17060 (Mar. 26, 2020) (March 2020 Order).[7] The March 2020 Order applied to "covered [noncitizens]," defined as persons "traveling from Canada or Mexico (regardless of their country of origin) who would otherwise be introduced into a congregate setting," to include "[noncitizens] seeking to enter the United States at POEs who do not have proper travel documents, [noncitizens] whose entry is otherwise contrary to law, and [noncitizens] who are apprehended near the border seeking to unlawfully enter the United States between POEs." 85 Fed. Reg. 17060,

---

[6] The interim rule and implemented procedure did not apply to U.S. citizens and lawful permanent residents. 85 Fed. Reg. 16559, 16567.

[7] The March 2020 Order took effect on March 20, 2020. 85 Fed. Reg. 17060.

24-cv-312-AGS-MSB

17061.

Under typical procedures, such individuals would spend hours or days in congregate settings while undergoing immigration processing, and POEs and U.S. Border Patrol stations are "not designed for, and are not equipped to, quarantine, isolate, or enable social distancing by persons who are or may be infected with COVID-19." 85 Fed. Reg. 17060, 17061. Holding covered noncitizens in congregate settings risked the spread and further transmission of COVID-19, with a concomitant increased strain on the U.S. healthcare system and supply chain. 85 Fed. Reg. 17060, 17061. The March 2020 Order indicated there was consideration of conditional release as an alternative and noted that it was "not a viable solution" because many covered noncitizens "may [have] lack[ed] homes or other places in the United States where they c[ould] self-isolate," and the CDC "lack[ed] the resources and personnel necessary to effectively monitor such a large number of persons." 85 Fed. Reg. 17060, 17067. It concluded that a conditional release mechanism "would jeopardize, not protect, the public health." 85 Fed. Reg. 17060, 17067. With consideration of all available information and experience, the CDC Director made the following determination regarding implementation of a quarantine:

> It is necessary for the public health to immediately suspend the introduction of covered [noncitizens]. The immediate suspension of the introduction of these [noncitizens] requires the movement of all such [noncitizens] to the country from which they entered the United States, or their country of origin, or another location as practicable, as rapidly as possible, with as little time spent in congregate settings as practicable under the circumstances. The faster a covered [noncitizen] is returned to the country from which they entered the United States, to their country of origin, or another location as practicable, the lower the risk the [noncitizen] poses of introducing, transmitting, or spreading COVID-19 into POEs, Border Patrol stations, other congregate settings, and the interior.

85 Fed. Reg. 17060, 17067.[8] The CDC requested the assistance of the Department of Homeland Security in implementing the March 2020 Order, as the CDC lacked the capability and resources to do so. 85 Fed. Reg. 17060, 17067; *see also* 42 U.S.C. § 268(b).[9]

---

[8] Like the interim rule, the March 2020 Order included exceptions, including that U.S. citizens and lawful permanent residents were not subject its provisions. 85 Fed. Reg. 17060, 17061.

[9] The March 2020 Order was extended and/or amended as the serious public-health

13

In September 2020, HHS and CDC published a final rule implementing Section 265. 85 Fed. Reg. 56424 (Sept. 11, 2020) (codified at 42 C.F.R. § 71.40). The final rule reiterated the interim final rule and permitted the CDC Director to "prohibit, in whole or in part, the introduction into the United States of persons from designated foreign countries" "for such period of time that the Director deems necessary to avert the serious danger of the introduction of a quarantinable communicable disease." 85 Fed. Reg. 56424, 56425. Subsequently, the CDC Director issued an Order to prohibit the introduction of all covered noncitizens into the United States, subject to certain exceptions, until the CDC Director determines that "the danger of further introduction of COVID-19 into the United States has ceased to be a serious danger to the public health," based on recurring 30-day reviews by the CDC. 85 Fed. Reg. 65806, 65807-08 (Oct. 16, 2020) (October 2020 Order). As with the March 2020 Order, the CDC requested the assistance of DHS in implementing the October 2020 Order.[10]

Here, Plaintiff Mothers E.P.E., H.S.C.G., S.S.F., and E.C.M.U. were "covered noncitizens" within the meaning of the COVID-19 quarantine. As such, their claims of false imprisonment (Count II), negligence for expulsion without first seeking USCIS' review of fear claims (Count III), negligence for expulsion to locations or into conditions which placed Plaintiffs' health and safety at risk (Count IV), and intentional infliction of emotional distress (Count VIII) are each a direct and proximate cause of the actions taken in imposing the COVID-19 quarantine. The COVID-19 quarantine required the suspension of all

_____

risks posed by the COVID-19 pandemic continued. *See, e.g.*, 85 Fed. Reg. 22424 (Apr. 22, 2020); 85 Fed. Reg. 31503 (May 26, 2020).

[10] After the events alleged in the Complaint, litigation ensued concerning Section 265, the interim final rule, the final rule, the CDC's 2020 orders, as well as CDC orders issued in 2021 and 2022. On March 4, 2022, the D.C. Circuit issued an order holding "in short, the Executive can expel the [p]laintiffs from the country. But it cannot expel them to places where they will be persecuted or tortured." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 722 (D.C. Cir. 2022) (affirming in part grant of preliminary injunction); *see also Huisha-Huisha v. Mayorkas*, 642 F. Supp. 3d 1 (D.D.C. 2022) (holding Title 42 Order to be arbitrary and capricious under the Administrative Procedure Act), *cert. and stay granted sub nom. Arizona v. Mayorkas*, 143 S. Ct. 478 (2022), *vacated as moot*, No. 22-5325, 2023 WL 5921335 (D.C. Cir. Sept. 7, 2023).

covered noncitizens from entering into the United States, and for all covered noncitizens to be returned to the country from which they entered the United States, or their country of origin, or another location as practicable, as quickly as possible. *See* 85 Fed. Reg. 16559, 16566; 85 Fed. Reg. 17060, 17067; 85 Fed. Reg. 56424; 85 Fed. Reg. 65806, 65807-08. Consistent with the COVID-19 quarantine, Plaintiff Mothers were each returned to the country from which they entered the United States. It follows, therefore, that the alleged injuries caused by their expulsion to Mexico directly result from the government's implementation of the COVID-19 quarantine. While Plaintiffs allege the government acted negligently and unjustly in expelling Plaintiff Mothers to Mexico, "[n]egligence in . . . establishing a quarantine . . . [is] barred" under the FTCA. *Dalehite*, 346 U.S. at 32; *see also Wallace*, 2021 WL 2853692, at *2 ("The Government retains this immunity even if it acts negligently in carrying out the quarantine.").

  *Wallace*, a case where claims arose from COVID-19 quarantine measures within a federal prison, is instructive here. In *Wallace*, the inmate-plaintiff alleged that BOP officials at FCI Butner "failed to secure the corridor of a quarantine dormitory that had confirmed and/or suspected cases of SARS-n-CoV-2, . . . [which] ultimately allowed prisoner[]s that were in close contact with confirmed and/or suspected cases of SARS-n-CoV-2 to enter and interact with prisoner[]s in a non-active dormitory." 2021 WL 2853692, at *1 (alternations in original). The plaintiff-inmate further alleged that the "inmates' temporary ability to travel between the two dormitories violated the Federal Bureau of Prisons General Post-Orders, Guidelines, Policy Memoranda, Training Manual, Captain's Orders, Operating Memorandum, or Covid-19 Action Plan." *Id.* (internal quotation marks omitted). As a result of these alleged failures to properly quarantine inmates, the plaintiff-inmate allegedly became sick with COVID-19. *Id.* at *2. The district court dismissed the inmate-plaintiff's claims, holding that the quarantine exception "immunizes the Government from suit for damages proximately caused by the decision whether to impose a quarantine and any actions undertaken by the Government to carry out the purposes of the quarantine." *Id.* at *2; *see also Thieme*, 2023 WL 2584102, at *10 (noting that the exception would apply if

15

1  plaintiffs "allege[d] they were harmed by [d]efendants' acts in carrying out a quarantine;
2  for example, that they were harmed by the quarantine lock-down conditions imposed on
3  them").

4       Given the scope of the quarantine exception, as interpreted by case law and reflected
5  in the history of the exception and incorporation into the FTCA, Plaintiff Mothers E.P.E.,
6  H.S.C.G., S.S.F., and E.C.M.U.'s Counts II, III, IV, and VIII fall within the exception; and
7  they should be dismissed for lack of subject matter jurisdiction. *See Wallace*, 2021 WL
8  2853692, at *2 (dismissing claim under quarantine exception to the FTCA). In the
9  alternative, the Court should grant partial summary judgment in favor of Defendant. *See*
10  *Dittman v. Medical Solution*, No. 2:17-cv-01851-MCE-CKD, 2019 WL 4302752, at *1
11  (E.D. Cal. Sept. 11, 2019) (noting that Federal Rule of Civil Procedure 56 allows a court to
12  grant partial summary judgment to dismiss part of a claim).

13
14  **B.**    **The Court Lacks Subject Matter Jurisdiction Over Certain Claims Due to the FTCA's Foreign Country Exception**

15       As discussed above, the FTCA's waiver of sovereign immunity to permit limited tort
16  suits is subject to exceptions. "Under the foreign country exception, the FTCA's waiver of
17  immunity does not apply to '[a]ny claim arising in a foreign country.'" *S.H. by Holt v.*
18  *United States*, 853 F.3d 1056, 1059 (9th Cir. 2017) (quoting 28 U.S.C. § 2680(k)). This
19  exception "bars all claims based on any injury suffered in a foreign country." *Sosa v.*
20  *Alvarez-Machain*, 542 U.S. 692, 712 (2004). Moreover, "the FTCA's foreign country
21  exception bars all claims based on any injury suffered in a foreign country, regardless of
22  where the tortious act or omission occurred." *Id.* In *Sosa*, the Court noted that the foreign
23  country exception codified Congress' "unwilling[ness] to subject the United States to
24  liabilities depending upon the laws of a foreign power." *Id.* at 707 (quoting *United States v.*
25  *Spelar*, 338 U.S. 217, 221 (1949)) (alteration in original).

26       Here, Plaintiffs assert multiple claims (false imprisonment, negligence, and
27  emotional distress) based on their expulsion to Mexico and on their alleged confinement in
28  Mexico. It follows, therefore, that Plaintiffs suffered their alleged injuries while in Mexico.

*See* ECF No. 1 at ¶ 158 (alleging for claim of false imprisonment that Plaintiff Infants "were confined in Mexico"); *id.* at ¶ 163 (alleging for claim of false imprisonment that Plaintiff Mothers "were confined in Mexico"); *id.* at ¶¶ 175–76 (alleging for negligence claim that Plaintiffs suffered injuries in Mexico); *id.* at ¶¶ 199–200 (alleging that Plaintiffs suffered emotional distress in Mexico related to injuries that occurred in Mexico). Plaintiffs themselves allege that their suffering occurred in Mexico; *see also* ECF No. 1 at 13, 19–21 (Plaintiffs E.P.E. and E.E.B.P. alleging they suffered in Mexico for 375 days); ECF No. 1 at 22, 29–31 (Plaintiffs E.C.M.U. and E.M.M. alleging they suffered in Mexico for 106 days); ECF No. 1 at 32, 38–39 (Plaintiffs H.S.C.G. and B.Y.C.G. alleging they suffered in Mexico for 256 days); ECF No. 1 at 40, 46–48 (Plaintiffs S.S.F. and A.L.T.J.P. alleging they suffered in Mexico in 220 days). Such claims are barred under the foreign country exception. *See Gaskin v. May*, No. 15-33 (EGS), 2023 WL 2239349, at *3–4 (D.D.C. Feb. 27, 2023) (finding FTCA claims barred where injuries occurred in Barbados). Thus, "because the injury occurred in [a foreign country], even if the allegedly wrongful act occurred in the United States, the foreign country exception bars th[ese] claims." *Domantay v. U.S. Dep't of Veterans Affairs*, No. 18-cv-03726-SK, 2018 WL 10501631, at *2 (N.D. Cal. Dec. 10, 2018) (dismissing claims under foreign country exception where injuries occurred in the Philippines).

To the extent Plaintiffs seek to avoid the foreign country exception by basing their claims on actions by the government that occurred primarily in the United States, such arguments—known as the headquarters doctrine—have been foreclosed. The Supreme Court has determined that the "headquarters [doctrine] analysis should have no part in applying the foreign country exception" and has held that "the FTCA's foreign country exception bars *all claims* based on any injury suffered in a foreign country, *regardless of where the tortious act or omission occurred*." *Sosa*, 542 U.S. at 711–12 (emphasis added). Accordingly, Plaintiffs' alleged injuries for Counts I, II, IV, and VIII that occurred in Mexico are barred by the foreign country exception and must be dismissed. *See Placencia v. United States*, No. 16-cv-02354-BEN-MDD, 2017 WL 3017708, at *2–4 (S.D. Cal. July

14, 2017) (dismissing claims for lack of subject matter jurisdiction based on foreign country exception). In the alternative, the Court should grant partial summary judgment in favor of Defendant to the extent the claims are based on injuries Plaintiffs sustained in Mexico. *See Dittman*, 2019 WL 4302752, at *1 (noting that Federal Rule of Civil Procedure 56 allows a court to grant partial summary judgment to dismiss part of a claim).

## C.   The Court Lacks Subject Matter Jurisdiction Over Count VII Due to the FTCA's Misrepresentation Exception

Among the FTCA's exceptions are claims "arising out of . . . misrepresentation, deceit, or interference with contract rights[.]" 28 U.S.C. § 2680(h); *see also Esquivel v. United States*, 21 F.4th 565, 577 (9th Cir. 2021). The exception "covers both claims of negligent misrepresentation and claims of fraudulent misrepresentation." *Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1151 (9th Cir. 2003). It applies not only to affirmative misstatements, but also omissions. *See Green v. United States*, 629 F.2d 581, 584–85 (9th Cir. 1980) (holding the misrepresentation exception precludes liability based on a misrepresentation by the government consisting either of false statements or a failure to provide information which it had a duty to provide); *Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003) (holding FTCA claim that officers "failed to provide . . . full, complete, and accurate information" barred by misrepresentation exception). The misrepresentation exception bars claims arising from "the government's failure to use due care in communicating information." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1160 (9th Cir. 2017).

"[T]he essence of an action for misrepresentation . . . is the communication of misinformation on which the recipient relies." *Block v. Neal*, 460 U.S. 289, 296 (1983). When a misrepresentation is alleged in a cause of action, but is not essential to an otherwise actionable claim, the misrepresentation exception will not bar that claim. *Id*. at 296–98. However, the Section 2680(h) bar applies if the government's misrepresentation is essential to the claim. *Doe v. United States*, No. 15-CV-1599-W-BGS, 2016 WL 5107656, at *2 (S.D. Cal. Apr. 7, 2016).

When determining whether a proposed claim arises out of an enumerated tort exception to the FTCA, the Ninth Circuit looks beyond the label a plaintiff has applied to the claim. *Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006) (citing *Thomas-Lazear v. FBI*, 851 F.2d 1202, 1207 (9th Cir. 1988)). For example, merely labeling a claim as one for "negligence" does not determine whether the misrepresentation exception applies. *See Doe*, 2016 WL 5107656, at *2–3. Instead, the Court must look beyond the title given to the claim.

Here, Plaintiffs have labeled their Complaint's Count VII as "NEGLIGENCE: Failure to Provide Plaintiffs with Information About Obtaining a U.S. Birth Certificate." ECF No. 1 at 55 (emphasis omitted). Notwithstanding the "negligence" label, the remainder of the title indicates this is a negligent misrepresentation claim. Furthermore, on the issue of duty, Plaintiffs allege that "Border Patrol agents had a duty to provide Plaintiff Mothers . . . with information regarding how they could obtain a U.S. birth certificate for their newborn children." ECF No. 1 ¶ 194. Plaintiffs further allege that Border Patrol agents breached this duty "when they failed to provide Plaintiff Mothers with any information about how they could obtain U.S. birth certificates . . . ." ECF No. 1 ¶ 195. This failure to provide the information allegedly resulted in damages. ECF No. 1 ¶ 196. The allegations of duty and breach demonstrate the claim arises out of an alleged misrepresentation through omission.

In an apparent effort to avoid the misrepresentation exception, Plaintiffs also allege a general duty of care in Count VII. Specifically, they state that "[t]he Border Patrol agents referenced above had a duty to Plaintiffs to act with ordinary care and prudence so as not to cause harm or injury to the Plaintiffs." ECF No. 1 ¶ 193. But, as discussed above, the Court must look to the essence of the claim to determine whether an exception applies. *See Snow-Erlin*, 470 F.3d at 808. As the court noted in *Doe*, "[m]asking the claim in terms of negligence and breach of duty does not contravene the fact that the nexus of Plaintiff's claim is the Government's failure to communicate . . . ." 2016 WL 5107656, at *3. Simply put, Count VII falls within the misrepresentation exception; and it should be dismissed for lack

of subject matter jurisdiction. *A.G. by and through Galindo v. United States*, No. 23-CV-745 JLS (KSC), 2023 WL 7134927, at *3 (S.D. Cal. Oct. 30, 2023) (federal courts lack subject matter jurisdiction to hear claims falling within an exception to the FTCA).

### D.   The Court Lacks Subject Matter Jurisdiction Over Counts III and IV as There is No Private Analogue

"The FTCA waives the federal government's sovereign immunity for tort claims arising out of the negligent conduct of government employees and agencies in circumstances where the United States, *if a private person*, would be liable to the claimant under the law of the place where the act or omission occurred." *Green v. United States*, 630 F.3d 1245, 1249 (9th Cir. 2011) (emphasis added). Further, state law provides the substantive law governing an FTCA claim. *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) ("In assessing the United States' liability under the FTCA, we are required to apply the law of the state in which the alleged tort occurred."); 28 U.S.C. § 1346(b)(1) ("the United States . . . [is] liable to the claimant in accordance with the law of the place where the act or omission occurred").

"Even if the conduct entails uniquely governmental functions, the court is to examine the liability of private persons in analogous situations." *Tekle v. United States*, 511 F.3d 839, 852 (9th Cir. 2007) (citing *United States v. Olson*, 546 U.S. 43, 45–46 (2005)). Indeed, the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA." *Olson*, 546 U.S. at 46. While the private analogue need not be exact, a plaintiff must offer a "persuasive analogy" showing that the government actor sued would be subject to liability under state law as if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992). Thus, for Counts III and IV, the Court must "examine the law regarding the liability of a private person" with respect to negligence in California. *See Tekle*, 511 F.3d at 854. To state a claim for negligence in California, a plaintiff must establish: (1) a legal duty to use due care; (2) breach of that duty; (3) the breach was the proximate or legal cause

of the resulting injury; and (4) actual loss of damage resulting from the breach of the duty of care. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 534 (2009).

As to Count III, Plaintiffs allege the government "had a duty to make a referral to USCIS when a noncitizen raised a fear claim," and that the government breached that duty "by failing to ensure that USCIS carried out a fear screening prior to expelling them to Mexico." ECF No. 1 ¶¶ 166, 169. As to Count IV, Plaintiffs allege the government "had a duty of care to Plaintiffs, including but not limited to, acting with reasonable and ordinary care, so as not to cause harm or injury to the Plaintiffs," and that the government breached that duty by "expelling Plaintiffs to Mexico" while knowing "that Plaintiffs were particularly vulnerable given their at-risk status." ECF No. 1 ¶¶ 173, 175. "Though Plaintiff[s] characterize [their] tort claims as negligence claims, the Court must look to the conduct forming the basis of the claim against the federal government to determine whether there is an analogy that can be drawn between that conduct and conduct which could form the basis of a cause of action against a private person." *Salazar-Gonzalez v. U.S. Citizenship and Immigration Services*, No. 15cv281-MMA (MDD), 2016 WL 11783402, at *3 (S.D. Cal. Oct. 11, 2016) (citation and internal quotation marks omitted).

Here, there is no private analogue under California law. Responsibility over immigration, foreign relations, and naturalization is inherently a federal power. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) (noting that the executive's inherent power to govern foreign relations includes considerable authority over immigration and that "[t]he exclusion of [noncitizens] is a fundamental act of sovereignty"); *Demore v. Kim*, 538 U.S. 510, 521 (2003) (noting Congress has "broad power over naturalization and immigration"). California law does not provide a claim for failure to ensure that USCIS performs a fear assessment or for failing to make a referral to USCIS for a fear assessment. Moreover, there is no private analogue under California law for situations of expelling or removing individuals to Mexico or a foreign country. Courts have found similar governmental decisions concerning immigration to have no private person counterpart and, thus, cannot serve as a basis for a claim under the FTCA. *See, e.g.*, *Bhuiyan v. United States*,

772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, No. CV-13-00867-PHX-DLR, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing "immigration matters" are "an inherently governmental function"); *Mazur v. United States*, 957 F. Supp. 1041, 1042–43 (N.D. Ill. 1997) (holding, in matters relating to immigration and naturalization, "only the United States has the power to act" and thus "there is no private analog under state law"); *Omoniyi v. Dep't of Homeland Sec.*, No. 10 Civ. 1344(DF), 2012 WL 892197, at *9 (S.D.N.Y. Mar. 13, 2012) ("[T]he alleged misconduct of [US]CIS in initially denying [the] naturalization application has no private analog and thus cannot be redressed under the FTCA.").

Accordingly, as there are no private analogues to Counts III and IV, they must be dismissed. *Salazar-Gonzalez*, 2016 WL 11783402, at *3 (dismissing claims for lack of subject matter jurisdiction where no comparable state analogue existed).

### E. Plaintiffs' Counts I and II Fail to State Claims for False Imprisonment Because Being Expelled to Mexico Does Not Constitute Confinement

In their false imprisonment claims, Plaintiffs allege they were "confined to Mexico." ECF No. 1 ¶¶ 158, 163. Specifically, Plaintiffs E.P.E., H.S.C.G., S.S.F., and E.C.M.U. allege that Border Patrol agents deprived them of their liberty by expelling them to Mexico and that they were "confined to Mexico" after they were expelled. ECF No. 1 ¶¶ 161, 163. Plaintiffs E.E.B.P., B.Y.C.G., A.L.T.J.P., and E.M.M. allege they were intentionally confined from the time of their births through their expulsion to Mexico, including the time they spent in Mexico, and that they were "confined to Mexico" after they were expelled. ECF No. 1 ¶¶ 155, 158. To the extent Plaintiffs claim they were confined in Mexico, their allegations fail to state a claim upon which relief may be granted.

Under California law, false imprisonment "is the 'unlawful violation of the personal liberty of another.'" *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997)). A false imprisonment claim requires "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011) (quoting *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000)). California courts have found that restraint or confinement "may be effectuated by means of physical force, threat of force or of arrest, confinement by physical barriers, or any other form of unreasonable duress." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994) (citations omitted); *see also Scofield v. Critical Air Med., Inc.*, 45 Cal. App. 4th 990, 1006 (1996) ("[C]ontemporaneous awareness of the false imprisonment is not, and need not be, an essential element of the tort.").

Here, Plaintiffs' expulsion from the United States did not result in confinement in Mexico. The Ninth Circuit and California courts have allowed plaintiffs to maintain a false imprisonment claim under California law when they were confined to a particular area, such as a prison or building. *See, e.g.*, *Watts v. Cnty. of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001) (bedroom); *Martinez*, 141 F.3d at 1381 (jail in Mexico); *Rhoden v. United States*, 55 F.3d 428, 432 (9th Cir. 1995) (detention facility); *Scofield*, 45 Cal. App. 4th at 1006 (airplane). But Plaintiffs in this case were not in custody, nor were their movements otherwise restricted to a particular area in Mexico. There are no allegations that Plaintiffs could not move freely about the country, go about their daily activities, or even leave Mexico for another country where they could enter lawfully. They were, therefore, not confined. As confinement is a required element of the cause of action, Plaintiffs have failed to state a claim.

Even if Plaintiffs were confined to Mexico, an entire country is too great an area of confinement to state a claim for false imprisonment. *See Shen v. Leo A. Daly Co.*, 222 F.3d 472, 478 (8th Cir. 2000) ("Although it is difficult to define exactly how close the level of restraint must be, in this case the country of Taiwan is clearly too great an area within which

to be falsely imprisoned."). The Eighth Circuit confronted this question in *Shen* when the plaintiff brought a claim for false imprisonment against his former employer when he moved to Taiwan for work and was later prevented from leaving the country by Taiwanese authorities. *Id.* at 475. Although the plaintiff could not leave Taiwan, he was free to move about the country. *Id.* at 478. The Eighth Circuit applied Arkansas false imprisonment law, which, similar to California law, consists of "the unlawful restraint against his will of an individual's personal liberty." *Id.* The court held that when the plaintiff was free to move about a country and was not restrained in his daily activities, there was no false imprisonment as a matter of law. *Id.* Although not binding on this Court, the holding of *Shen* is persuasive. Plaintiffs here were free to move about Mexico and leave the country if they so desired. Plaintiffs were likewise not restrained in their daily activities within Mexico. Here, as in *Shen*, there was no false imprisonment.

Plaintiffs' allegations that they were "confined to Mexico" are insufficient to state a claim for which relief can be granted. Accordingly, the claims should be dismissed to the extent the claims are based on false imprisonment in Mexico. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (noting dismissal under Rule 12(b)(6) is appropriate when the complaint lacks sufficient facts to support a cognizable legal theory). In the alternative, the Court should grant partial summary judgment in favor of Defendant. *See Dittman*, 2019 WL 4302752, at *1 (noting that Federal Rule of Civil Procedure 56 allows a court to grant partial summary judgment to dismiss part of a claim).

## F.   The Court Should Dismiss, or Strike, Plaintiffs' Demand for Attorneys' Fees for Lack of Subject Matter Jurisdiction

"The FTCA does not contain an express waiver of sovereign immunity for attorneys' fees and expenses." *Anderson,* 127 F.3d at 1191. Moreover, no waiver should be implied. *Id*.; *Estate of Munoz v. United States*, No. 3:23-cv-1422-JES-SBC, 2024 WL 584430, at *3 (S.D. Cal. Feb. 13, 2024) (striking demand for attorneys' fees in FTCA action); *A.G. by and through Galindo*, 2023 WL 7134927, at *17 (finding FTCA does not waive the government's sovereign immunity for attorneys' fees and expenses). Here, Plaintiffs

demand an award of attorneys' fees in the Complaint's Prayer for Relief. Because the Court lacks subject matter jurisdiction over the claim, it should be dismissed or, in the alternative, stricken.

## IV.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant its motion to dismiss and strike or, in the alternative, for partial summary judgment.

DATED:  April 26, 2024                    Respectfully submitted,

TARA K. McGRATH
United States Attorney

*/s/ Ernest Cordero, Jr.*
ERNEST CORDERO, JR.
Assistant United States Attorney

*/s/ Erin M. Dimbleby*
ERIN M. DIMBLEBY
Assistant United States Attorney

*/s/ Kelly A. Reis*
KELLY A. REIS
Assistant United States Attorney

Attorneys for Defendant
United States of America

## CERTIFICATION OF COMPLIANCE

Pursuant to Civil Chambers Rule 5, I hereby certify that on April 23, 2024, counsel for Plaintiffs and counsel for Defendant met and conferred by videoconference regarding resolution of the issues contained within this motion. The parties were unable to reach a resolution that eliminated the need to file this motion.

DATED:  April 26, 2024

*/s/Erin M. Dimbleby*
ERIN M. DIMBLEBY
Assistant United States Attorney