<b style="color:red">Exhibit B</b>

# LEGACY ENHANCEMENT
# MINORS MASTER POOLED TRUST AGREEMENT

### August 24, 2020

## **LEGACY ENHANCEMENT MINORS MASTER POOLED TRUST AGREEMENT**

      This Minors Master Pooled Trust Agreement ("Trust Agreement") is established on the \_\_\_\_ day of August, 2020, by Legacy Enhancement, a Texas domestic nonprofit corporation (as evidenced by Addendum "A" of this Trust Agreement) as Settlor and Trustee. Legacy Enhancement is an Internal Revenue Service tax-exempt organization (as evidenced by Addendum "B" of this Trust Agreement). Each beneficiary of the Minors Master Pooled Trust is a minor child whose interests are in need of being protected and preserved due to his or her minority.

### **Article I – Purpose of the Trust**

1. Each beneficiary of this Trust Agreement shall have a separate account for his or her sole benefit, referred to herein as the "sub-account". The primary purpose of this Trust is to protect each beneficiary from the loss of his or her Trust assets through undue influence, misuse, or exploitation by others prior to the beneficiary's reaching the age of majority. The Trustee may make distributions from a beneficiary's sub-account for medical, educational, or other personal needs identified by the Trustee.

2. The Trustee may use so much of the principal and income of a beneficiary's sub-account as the Trustee deems advisable for the use and benefit of the minor. The Trustee may take into consideration other sources of income and assets available to the beneficiary before making any distributions which fall within the purposes of this Trust.

3. No distribution under this Trust shall discharge the legal obligation of the beneficiary's parents to support the beneficiary in accordance with the laws of the state of the parents' domicile.

4. It is the best interest of the beneficiary, and not that of any other person, which governs the distribution decisions of the Trustee, even if the distributions result in the depletion of the entire Trust sub-account.

### **Article II – Joinder Agreement**

1. Individuals who wish to participate in the Master Pooled Trust shall submit a "Joinder Agreement" to the Trustee. The Joinder Agreement may be executed by a parent, court-appointed guardian, guardian ad litem, or any other individual or entity authorized by a court to enter into such an Agreement using the minor's funds. The applicant is referred to as the Grantor. The beneficiary may not be the applicant.

2. The Trustee has the sole and absolute discretion in determining whether to approve any Joinder Agreement application. If the Joinder Agreement is approved, it becomes irrevocable but subject to amendment as needed for the well-being of the beneficiary or as required under federal or state law and regulations.

## Article III – Trust Sub-Accounts

1. A separate account ("sub-account") shall be maintained for each beneficiary of the Trust. Sub-accounts are pooled for purposes of investment and management of funds by an entity or individual chosen by the Trustee to serve as Fund Manager.

2. Additions to the funds may be made to a sub-account at any time subject to the absolute right of the Trustee to accept or refuse assets of any nature into the sub-account.

## Article IV – Trust Is Irrevocable

1. This Trust Agreement is irrevocable. An individual sub-account shall be effective and irrevocable upon the valid execution of the Joinder Agreement by an authorizedvGrantor, acceptance of the Joinder Agreement by the Trustee, and the funding of the sub-account. Once established, the sub-account assets shall be distributed in accordance with the terms of this Trust Agreement and the signed Joinder Agreement. The sub-account beneficiary may not be changed under any circumstance.

2. The Trustee may at any time amend this Trust Agreement by an instrument in writing signed and acknowledged by the Trustee to effectuate its purposes as expressed herein, and to comply with changes in federal and state laws and regulations which come into effect subsequent to the signing of this Agreement, or to clarify any provision or scrivener's error. No amendment may change or affect the interests or rights of a sub-account beneficiary.

## Article V – Distributions

1. The Trustee shall have sole, absolute and unfettered discretion in making distributions. In exercising discretion, as to the amount of any distribution to the beneficiary, the Trustee may consider:

    a. the beneficiary's general standard of living;

    b. the age, health, education, and maintenance of the beneficiary; and

    c. other funds, income, or capital, reasonably available to the beneficiary and known to the Trustee.

2. The Trustee shall take into consideration information provided in the Joinder Agreement when making decisions regarding distributions. The judgement of the Trustee and not that of any other person or entity shall be the sole determining factor by which distributions are made.

3. The Trustee shall not be liable to a sub-account beneficiary for acts undertaken in good faith. If the sub-account beneficiary or his or her family receives means-tested public benefits, it is the responsibility of the Grantor to timely inform the Trustee so that such benefits can be taken into consideration before a distribution is made.

4. The Trustee shall hold, manage, invest and reinvest the Trust property, collect the income therefrom, and pay from the Trust property all lawful charges, assessments, fees, taxes and other expenses properly incurred in the formation, administration and protection of the Trust. Any income not distributed to or for the benefit of the beneficiary shall be added to the principal.

5. In the Trustee's sole, absolute, and unfettered discretion, distribution of income or principal to the Beneficiary may be:

    a. paid directly to the Beneficiary;

    b. deposited in any bank to the credit of the Beneficiary in an account carried in the Beneficiary's name, either alone or jointly with others;

    c. expended for the benefit of the Beneficiary; or

    d. paid to the legal guardian or other authorized representative of the beneficiary, who has undertaken the responsibility, legally or voluntarily, for the support and maintenance of the Beneficiary as his or her legal representative.

6. If at any time during the existence of a sub-account, the beneficiary is determined by a governmental agency to be disabled, or is adjudicated incapacitated by a court of competent jurisdiction, then the Trustee may refuse to make a requested distribution to or for the beneficiary. In that event, the Trustee may apply to a court of competent jurisdiction to establish a first party special needs trust in accordance with the provisions of 42 U.S.C. 1396p(d)(4)(A); or to transfer the sub-account to a pooled trust for the benefit of persons with disabilities meeting the requirements of 42 U.S.C. 1396(d)(4)(C). The Trustee shall seek authority to execute any and all documents required to effectuate the change, and shall transfer the remaining balance of the existing sub-account to the new account or sub-account, or as otherwise directed by the court.

## Article VI – Spendthrift Provision

1. None of the principal or income of a beneficiary's sub-account shall be anticipated, assigned, encumbered, or subject to any creditors' claims or to any legal process. No part of the Trust sub-account shall be liable for nor available to a beneficiary's creditors. Further, no part of a Trust sub-account shall be subject to the claims of a beneficiary's voluntary or involuntary creditors.

## Article VII – Trust Termination

1. The Trust shall terminate on the first to occur of:

    a. the exhaustion of the corpus;

    b. the death of the beneficiary;

    c. the beneficiary attaining the age of majority in effect in the state or province where the beneficiary is then domiciled; or

    d. Such age or time as otherwise directed by a court of competent jurisdiction.

2. Upon termination due to the death of the Beneficiary, the balance of the Trust property, after payment of expenses, shall be distributed to the beneficiary's estate.

3. Upon termination due to the beneficiary attaining the age of majority in the state in which he or she is then domiciled, the remaining balance of the sub-account, including any undistributed income, shall be distributed outright and free of trust to the beneficiary.

## Article VIII – Investments

1. The Trustee may choose to contract with a Fund Manager to invest and reinvest in stocks, bonds and other securities and properties, real, personal, or mixed, and wherever situated. Such investments may include but are not limited to stocks, unsecured obligations, undivided interests, interests in investment trusts, common trust funds, mutual funds, and annuities. The Trustee is authorized to hold assets in cash if that position is advantageous to the beneficiary's sub-account.

2. The Trustee shall select assets for allocation to a sub-account as the Trustee shall deem to be in the best interests of a beneficiary, and assets allocated to one sub-account need not be of the same character as assets allocated to another sub-account. Without limiting the generality of the foregoing, the Trustee may allocate assets having different income tax bases in such manner, amounts, and proportions as the Trustee may deem appropriate.

3. The Trustee may authorize the Fund Manager to employ the services of a for-profit entity to manage some of the financial activity of the sub-accounts, individually or pooled. However, the Trustee shall maintain ultimate managerial control over the Trust. The use of for-profit entities is always subordinate to the non-profit Trustee of this Master Pooled Trust.

4. An accounting of each sub-account shall be provided to the Grantor and the beneficiary's legal representative not less than annually. The accounting shall include a complete statement of the sub-account assets and all the receipts, disbursements, and distributions to or from such Trust sub-account occurring during the reporting period. The sub-account records along with all Trust records or documentation shall be available and open at all reasonable times for inspection by the beneficiary or the legal representative of the beneficiary, or any person authorized in writing signed by the beneficiary or his or her legal representative.

5. The Trustee may exercise any available election under any applicable income, estate, inheritance, succession, or gift tax law. The Trustee shall not be liable to any beneficiary of this Trust for tax consequences occasioned because of the exercise of, or failure to exercise, any such elections or because of the allocation and distribution of property in kind, in full or partial satisfaction of any beneficiary's interest in the Trust. The Trustee is authorized to

allocate all, or any portion of the receipts treated as capital gains for federal tax purposes as either income or principal, as the Trustee determines such allocation to be in the best interests of the Beneficiary.

6. The Trustee is authorized to pay any income tax liability of a beneficiary which results from income received by the Trust. The funds used to pay this income tax liability shall be paid directly to the appropriate taxing authority. The beneficiary shall not have any right to or interest in any of these funds paid by the Trustee. These funds are not a resource of the beneficiary and should not be treated as a distribution of income for purposes of medical assistance eligibility.

7. In dealing with sub-account property, the Trustee shall observe the standard of care that would be observed by a prudent person dealing with the property of another.

### Article IX – Trustee Powers

1. The Trustee shall have all powers, privileges, and authority consistent with fiduciary conduct which the Trustee deems necessary or advisable to exercise in order to administer the Trust created herein in a business-like manner. In addition to all common law and statutory authority, the Trustee, except as otherwise provided, shall have the power without approval of any court and in any manner, it considers advisable:

    a. To retain any property in the form in which it is received;

    b. To repair, insure, or otherwise care for any tangible personal property and to pay any shipping or other expenses relating to the property as the Trustee deems advisable;

    c. To abandon any property the Trustee considers worthless;

    d. To sell, mortgage, exchange, lease, or otherwise dispose of or encumber any property on any terms, with no purchaser being bound to see to the application of any proceeds and whether the effect thereof extends beyond the term of this Trust;

    e. To pay, compromise, or contest claims or controversies involving the Master Trust, including claims for taxes;

    f. To make contracts and execute instruments as may be necessary in the exercise of the powers granted herein;

    g. To employ attorneys, accountants, brokers, custodians, investment counsel and investment managers or other agents for necessary services provided to the Trust, and to compensate them out of the income or principal of the Trust estate or both;

    h. To perform other acts necessary or appropriate for the proper administration of the Trust, execute and deliver necessary instruments, give full receipts and discharges;

    i. To pay any expense for the collection of Trust property or the management or protection of the Trust, and any taxes or assessments that may be levied upon the Trust principal or income, including such taxes for which the beneficiary of the Trust may be liable.

## Article X – Indemnification of Trustee

1. Except for willful default of any duty hereunder or gross negligence, the Trustee shall not be liable for any act, omission, loss, damage, or expense arising from the performance of its duties under this Trust Agreement. The Trustee is not subject to any liability whatsoever to any person for any distributions made or not made by the Trustee or in the Trustee's discretion pursuant to the terms of this Trust Agreement.

## Article XI – Administrative Expenses

1. The Trustee has responsibility to minimize payment of administrative expenses of the Trust estate to the extent reasonably possible. General administrative expenses of the Trust, if not paid from any other sources shall be allocated equally among all the then-funded Trust sub-accounts.

2. Any necessary or proper expenses incurred regarding the operation of any Trust sub-account, including but not limited to any attorneys' or accountant fees, investment fees, management fees, taxes, debts, or charges shall be paid by the Trustee out of that Trust sub-account.

3. Costs and expenses of defending the Trust Agreement from any claim, demand, legal or equitable action, suit or proceeding may in the sole discretion of the Trustee either:

    a. be apportioned on a pro rata basis to all then-funded Trust sub-accounts;

    b. be charged solely against the Trust sub-account of the affected beneficiary.

## Article XII – General Provisions

1. The Trustee is entitled to reasonable compensation for its services from the assets of the Trust in accord with a schedule of fees and charges attached to the Joinder Agreement. Such fees may include, but are not limited to, payments for advisory or management services, and administrative and sub-accounting services rendered by the Trustee or its agents or rendered to the Trustee by others on behalf of the Trust and its beneficiaries. The Trustee shall be entitled to reimbursement for any reasonable expenses incurred by it individually on behalf of the entire Trust estate or a Trust sub-account.

2. The Trust shall initially be funded with the sum of One Hundred Dollars and Zero Cents ($100.00) to be given to the Trustee at the time of execution.

3. All reasonable expenses in establishing, maintaining, administering, and defending this Trust, including but not limited to, reasonable attorney fees, accounting fees, Trustee fees, and costs shall be a proper charge to the Trust.

4. The Trustee has a duty of loyalty to the beneficiaries to act in good faith and in accordance with the terms of the Trust Agreement.

5. The Trustee shall act with sole and unfettered discretion and shall be liable only for actual fraud, misapplication, gross negligence, bad faith, or willful disregard of the provisions in this Trust Agreement. No Trustee appointed under the provisions of this Trust Agreement shall have any duty to examine, verify, question or audit the books, records, accounts, or transactions of any previous Trustee and shall not be liable to any person interested in any trust for any mistakes, errors, default or other acts committed by any such previous Trustee.

6. The situs of this Trust is Texas. The Trust Agreement shall be interpreted in accordance with the laws of the United States and the State of Texas.

IN WITNESS WHEREOF, executed this 24 day of August, 2020, in Beaver County, Pennsylvania.

LEGACY ENHANCEMENT, TRUSTEE

By: Christian Bruns, President

STATE OF PENNSYLVANIA
COUNTY OF BEAVER

This instrument was acknowledged before me on this 24 day of August, 2020, by Christian Bruns, President of Legacy Enhancement, a Texas domestic nonprofit corporation, who is authorized to and does execute this instrument on behalf of said corporation.

NOTARY PUBLIC: _____

COMMONWEALTH OF PENNSYLVANIA - NOTARY SEAL
Andrea K Metcalf, Notary Public
Beaver County
My Commission Expires 04/01/2023
Commission Number 1227841

☒ Personally known.
☐ Produced identification: _____